```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF NEW YORK
 2
                                          .
 3   THE UNITED STATES OF AMERICA,        .  Case No. 07-mj-0860
                                          .
 4              Complainant,              .
                                          .  New York, New York
 5           vs.                          .  Wednesday, May 30, 2007
                                          .
 6   JOSEPH TRICARIO,                     .
                                          .
 7              Defendant.                .
     . . . . . . . . . . . . . . . . . .
 8
              TRANSCRIPT OF PRESENTMENT AND DETENTION HEARING
 9                   BEFORE THE HONORABLE FRANK MAAS
                      UNITED STATES MAGISTRATE JUDGE
10

11
     APPEARANCES:
12
     For the Government:          Eric J. Snyder, Esq.
13                                OFFICE OF THE U.S. ATTORNEY
                                  One St. Andrew's Plaza
14                                New York, New York 10007

15   For the Defendant:           Douglas M. Tween, Esq.
                                  Baker & McKenzie, LLP
16                                1114 Avenue of the Americas
                                  New York, New York 10036
17

18
     Audio Operator:              Electronically Recorded
19                                by Court Personnel

20   Transcription Company:       Rand Transcript Service
                                  80 Broad Street, Fifth Floor
21                                New York, New York 10004
                                  (212) 504-2919
22                                www.randtranscript.com

23

24
     Proceedings recorded by electronic sound recording, transcript
25   produced by transcription service.
```

1        (Proceedings commence.)
2             THE CLERK:  United States v. Joseph Tricario.
3             Counsel, state your name for the record.
4             MR. SNYDER:  For the Government, Your Honor, Eric
5    Snyder.  And present at counsel table with me is Special Agent
6    Michael Kastner (phonetic) of the FBI.  Good evening, Your
7    Honor.
8             THE COURT:  Good evening.
9             MR. TWEEN:  Good evening, Your Honor.  Douglas Tween
10   from Baker & McKenzie as CJA counsel on behalf of Joseph
11   Tricario.
12            THE COURT:  And is there a financial affidavit?
13            MR. TWEEN:  There is, Your Honor.
14       (Pause in proceedings.)
15            THE COURT:  Mr. Tricario, this afternoon I'm going to
16   advise you of your rights.  I'm going to inform you of the
17   charges against you.  I'll decide whether you need to have
18   counsel appointed to represent you and whether there are
19   conditions under which you can be released.
20            You have the right to remain silent and are not
21   required to make any statements.  Even if you have made
22   statements to the authorities, you need not make any further
23   statements, and anything that you do say can be used against
24   you.
25            You also have the right to be released either with

1  conditions or without conditions pending a trial of this case,
2  unless I find that there are no conditions that would
3  reasonably assure both your presence in court and the safety of
4  the community.
5          Last, you have the right to be represented by counsel
6  during all court proceedings, including this one, and during
7  any questioning by the authorities.
8          I see you have filled out a financial affidavit.
9  Would you stand and raise your right hand, sir?
10         Do you swear that the information in your financial
11 affidavit is true and correct, and that this is your signature
12 at the bottom?
13         THE DEFENDANT:  Yes.
14         THE COURT:  Have a seat.
15         I will direct that Mr. Tween be appointed to represent
16 you, sir.
17         You've been charged in a one-count complaint with
18 having violated Title 18, United States Code, Section 894, by
19 conspiring together with others to use extortion as a means to
20 collect or attempt to collect credit, and to punish a person
21 for the non-repayment of such extensions of credit; namely,
22 threatening somebody with physical violence if they didn't pay
23 -- repay a loan or other debt.  That's a crime which carries
24 with it a number of potential sanctions, including jail time.
25         The complaint indicates that there was a threat made

1  Saturday at 8:30 in the morning.  Was that the approximate date
2  and time of arrest?
3        MR. SNYDER:  Your Honor, it was this morning at
4  approximately 4:50 a.m., in front of his house on Long Island.
5        THE COURT:  Thank you.
6        Mr. Tween, have you seen the complaint?
7        MR. TWEEN:  I have, Your Honor.  I have read the
8  complaint, and I have had an opportunity to confirm that my
9  client, in fact, has also read the complaint, and we have
10 discussed it.  He's represented to me that he understands the
11 complaint and has no questions.
12       THE COURT:  Thank you.
13       With respect to this charge, Mr. Tricario, you're
14 entitled to a preliminary hearing at which the Government will
15 have the burden of establishing that there's probable cause to
16 believe that the crime charged was committed, and that you're
17 one of the people who committed the crime.  If probable cause
18 is not established, you'll be released from this charge, but if
19 it is established, the Government then will have the right to
20 proceed to trial against you.
21       If, at the end of this evening's proceeding, you're in
22 jail, you have a right to have that hearing held within ten
23 days.  But if I release you on bail, it need only be held
24 within twenty days.  There will, however, be no preliminary
25 hearing if, before the date for which it's scheduled, either

1  the Grand Jury returns an indictment against you, or the United
2  States Attorney files a criminal information against you.
3         What's the Government's position regarding bail?
4         MR. SNYDER:  The Government seeks detention, Your
5  Honor.
6         THE COURT:  Mr. Tween.
7         MR. TWEEN:  Your Honor, the defense would concur with
8  the recommendation of pretrial services and seek to offer a
9  package.
10        THE COURT:  Okay.  I'll hear from Mr. Snyder first.
11        MR. SNYDER:  Your Honor, there's a bit of history
12 here, and I guess I'll start as early as I need to.
13        There is another defendant that was arrested; the
14 person's name was Charlie Salzano.  He's referred to in the
15 complaint as "Charlie Brown," which is what the victim knew him
16 as, and he was first presented on a very similar complaint --
17        THE COURT:  Right.
18        MR. SNYDER:  -- back in December -- I think it was
19 December 1, 2006.  He was thereafter indicted into a RICO, and
20 has since pled guilty.  He was detained on the complaint and
21 stayed in jail; he pled guilty on April 19th, for this very
22 offense, including -- well, he pled guilty to this extortion --
23        THE COURT:  But I take it he was charged with things
24 that went beyond this.
25        MR. SNYDER:  Well, not much more, Your Honor.  There

1   were two criminal acts:  One which is here, and that is this
2   loansharking to Victim 1, who's a taxi business owner; and it
3   could be charged then as an extortion when they try to collect
4   the money by the means they do, and it can be charged also as
5   the collection of an extortion of a loansharking debt by
6   extortionate means.  He was charged with that set of crimes.
7           It was also a RICO because the other predicate was a
8   smaller extortion of about a total of $40,000 from some
9   brothers that ran a gambling operation.  That's Charlie
10  Salzano.
11          THE COURT:  Right.
12          MR. SNYDER:  To be clear, Mr. Tricario was not, that
13  we know of, involved in that smaller extortion of the gambling
14  brothers, but I expect that when this is presented to a Grand
15  Jury, they will vote at least an indictment similar to one that
16  was returned today -- or it was sealed, and it was unsealed
17  today before Judge Kaplan, as to a man named Danny Leo.  Now
18  that's also relevant.
19          Danny Leo was detained today by Judge Kaplan on an
20  indictment containing four counts; three of those counts for
21  this particular loansharking, collection of a loansharking
22  debt, and extortion, for this act; this victim, these acts by
23  Mr. Tricario and Mr. Salzano, on behalf of Danny Leo, who we
24  will prove is the acting boss of the Genovese Crime Family;
25  that's Danny Leo.

1  Salzano is a primary lieutenant to Danny Leo, the
2  acting boss and a soldier.  And he's now, obviously,
3  incarcerated after his plea.  Salzano was the immediate
4  supervisor of Mr. Tricario.  The victim described Mr. Tricario
5  as "the muscle."  So what you have before you is "the muscle"
6  for the soldier of the largest, most violent organized crime
7  family in New York or in the country:  The Genovese Crime
8  Family.  That's the sort of history to it.
9  He's charged a complaint that was signed, I believe
10 yesterday or last night.  We haven't presented this to the
11 Grand Jury.  We can do so -- it depends on when he wants to
12 waive to -- immediately.  All the evidence is before them
13 already, quite frankly, and it would just be submitting an
14 indictment for their consideration.
15 Danny Leo, the boss, was detained today, and Salzano
16 was detained previously.  I have the detention order from the
17 Salzano detention; it's Judge Kaplan.  I have it here, if you'd
18 like me to hand it up.  I also have the minutes or the
19 transcript of the argument, if Your Honor wishes to consider
20 that, as well, and I can hand that up.  At the same time, I'm
21 going to hand up two transcripts that I'll describe for you,
22 for your consideration.
23 Your Honor, this involved a business owner who
24 borrowed --
25 THE COURT:  I take it you've given copies to Mr.

1  Tween.

2           MR. SNYDER:  I've given him copies of the transcripts,
3  which he's agreed to return because they are drafts, and he has
4  agreed not to use them against us at trial.  We didn't have a
5  stipulation for him to sign here today.  And I made available
6  or showed him the detention order.  And I do have a marked-up
7  version of the transcripts; if he'd like to have that in front
8  of him, that's fine.  I'll just ask he give that back, as well.

9           Your Honor, this business owner borrowed three
10 loansharking loans, $50,000 each, a number of years back, at
11 three points, which is three percentage points per week --

12          THE COURT:  Right.

13          MR. SNYDER:  -- which meant that he was paying $1,500
14 a week or -- sometimes the math gets a little bizarre -- it's
15 about $1,500 a week, I understand, just in interest.  Over the
16 course of several years, he paid back approximately $200,000,
17 but still owed at least $100,000 on the principal.

18          THE COURT:  Right.

19          MR. SNYDER:  Over the course of 2006, he began
20 receiving -- or he had always been in touch and receiving some
21 phone calls to get this money out of it, but Joseph Tricario,
22 the defendant, was the one who would make the calls to the
23 victim and set up times when they were going to come and see
24 him to imply or actually express threats, and that became
25 escalating over time.

1         We didn't record the many early meetings between
2   Tricario and the victim, nor did we record the early meetings
3   between Salzano, Tricario, and the victim.  But as the threat
4   level escalated, we did -- we were able to place a recording
5   device on the victim and let him go forward with -- what we had
6   were two meetings, and that's what you're looking at:  October
7   7th and October 28th.  Those were not only audio-recorded by
8   the victim in what's quite clear recordings of both Tricario
9   and Salzano talking; they were video-recorded, as well, and at
10  least this agent here at the table, as well as others, were
11  close by with visual surveillance of the meetings.
12        At each of these meetings, Mr. Tricario would go in to
13  the business of this victim and pull him out to bring him
14  around the corner, to meet with the defendant's boss, Charlie
15  Salzano, the made man, the soldier.  And he would ask him
16  questions like, how much you got today.  And you'll see in, I
17  think the October 7th one, the tax owner replies, "I got a
18  thousand."  And then reflected on the transcript as "UM" --
19  these were made a long time ago, Your Honor --
20        THE COURT:  Uh-huh.
21        MR. SNYDER:  -- the victim -- I mean Tricario, the
22  defendant, says, "I'll tell you right now, he's going to
23  fucking snap," referring to Soldier Charlie Salzano, who was
24  waiting in a car around the corner.
25        In another meeting, not one that's recorded, I'm told

1  that the victim was asked by Tricario, are you wearing a wire;
2  an interesting enough question for the defendant to ask the
3  victim.
4          You'll see that there's other -- other conversations -
5  - or other statements by Mr. Tricario and ...
6      (Counsel confers.)
7          MR. SNYDER:  And that was in the October 7th
8  recording.  In addition to the beginning portions on Page 2, he
9  sort of backs up his boss when the victim is pleading, you
10 know, for more time.  He says, "He's right" -- meaning Soldier
11 Salzano -- "it's going on for months now."  And this is all in
12 an effort to get him out of -- get him to pay more money.
13         Then on the next page, Page 3, toward the top, three
14 lines down approximately, Tricario says, "I asked you the other
15 day on the phone, what are you going to have" -- referring, you
16 know, to what the taxi owner would produce on that particular
17 day.
18         If you look, the more threatening statements are by
19 the soldier, Salzano, when he actually refers to Danny Leo, the
20 acting boss, when he says, "If you lie to me, I'm going to --
21 I'm going to shoot you," to Danny.  He also tells him he's
22 going to mess with some of his business relationships with a
23 guy named JT; he's going to take him in a wheelchair.  These
24 are very threatening encounters, in which this defendant, who -
25 - you know, he's before you, you see him in court.  You know,

1  he's quite an able fellow, at least, you know, on appearance.

2         He was brought around, and the victim understood him
3  to be the muscle.  He was there to provide that kind of
4  intimidation.  He had numerous contacts outside of just these.
5  And the FBI made a decision that, after the second of these two
6  meetings, that because of the escalating nature of the
7  violence, they didn't want to risk having Charlie out there, at
8  least, saying he's going to have people go and hurt the victim.

9         I think it's obvious that these are violent
10 encounters.  Although it's charged very quickly last night in
11 this complaint in this manner, I expect the indictment will
12 have at least Counts Two and Three from the indictment that was
13 returned today, involving extortion and the collection of a
14 loansharking debt.

15        Extortion is a crime of violence under 3140(2)(e)*, I
16 believe.  This makes it a presumption case; it's with a twenty-
17 year max, the extortion.  And beyond all the presumption,
18 beyond the facts of how threatening this is, there's a whole
19 other sort of layer of menacing threat here, and that is that
20 this is the muscle, this is the guy they send to intimidate the
21 victim.

22        Charlie Salzano, the soldier, pled guilty, he's in
23 jail.  Danny Leo, the acting boss, was detained today for this
24 conduct.  It was his money.  This man here, if he's out, knows
25 the victim, knows where to find him, has found him on numerous

1   occasions, knows how to contact him.  I would be very concerned
2   that the acting boss now, while detained, would be sufficiently
3   upset about being detained that he might use someone like this
4   man here to be more than just muscle, but to help rid the
5   Genovese Family of this problem and help him get rid of this
6   victim.
7           THE COURT:  I get the picture.
8           MR. SNYDER:  Yes.  We're concerned, Your Honor.  And I
9   think he is a threat, I think he's a safety hazard to the
10  community.  I think the presumption applies.  They would have
11  to rebut that.  And I can answer any of the questions Your
12  Honor has.
13          THE COURT:  Well, it does appear to be a presumption
14  case, Mr. Tween, so what are you proposing?
15          MR. TWEEN:  Your Honor, I concede that this is a
16  presumption case, but I would submit that this is a case where
17  the presumption can be overcome.  And I suggest that, as
18  pretrial services has recommended, that Your Honor put together
19  a package that can assure this defendant's appearance.
20          What Mr. Snyder calls "the history" here certainly
21  goes way beyond the parameters of this complaint.  And I
22  understand that, for purposes of a bail hearing, he is within
23  his rights to do that.  But it seems to me that much of what he
24  has just asserted is an effort at guilt by association and
25  guilt by smear, frankly.  And it --

1            THE COURT:  Well, the tapes are sort of guilt by
2    association, in that they're talking about "he's going to snap"
3    and then -- I mean, it does make it appear to be an incredibly
4    strong case, complete with FBI surveillance, so that there are
5    not identity issues, even.
6            MR. TWEEN:  I would not concede that, Your Honor.
7            But also, your point is right that -- of guilt by
8    association; in that, if you parse out in these tapes what my
9    client is alleged to have said, there's virtually nothing
10   there.  There is virtually nothing there.  Virtually all of
11   this is other people speaking.
12           It strains credibility, to me at least, to assert that
13   this man is organized crime muscle when he is a man who works
14   to support his family; he goes to work every single day.  He's
15   got a house, he's got two kids and a spouse.  He has family
16   here in the area, his wife has family in the area, his mother
17   lives in the area.  All of these people are prepared -- and we
18   can discuss a package, Your Honor, as pretrial services -- but
19   these are all people that he's got very close ties to, he
20   maintains close ties to.
21           THE COURT:  Well, that's what I'm -- that's what I'm
22   trying to get you to tell me.  What package, in terms of a
23   bond, are you proposing, what kind of collateral?
24           MR. SNYDER:  Your Honor, we're prepared to -- we're
25   prepared to propose to agree with the recommendation of

1  pretrial services in the high bond, I would say guaranteed by
2  my client's house, guaranteed by perhaps one of his brothers'
3  residences.  He's got three brothers that live in the area, all
4  of them have residences.  His wife has family in the area, all
5  of whom have residences.  I think that they would be prepared
6  to -- some of them, at least, would be prepared to put up their
7  houses as a testimony to their faith and their confidence in
8  this man.
9       There is a point I want to raise because it's in the
10 pretrial services report and it's something that should be
11 discussed.  My client has one prior conviction in 1990, for
12 possession of a handgun.  He was, at the time, I think twenty
13 years old, twenty-one years old, approximately.  This is
14 seventeen years ago, Your Honor, that there was this
15 conviction.
16      And there's a couple of points that bear mentioning,
17 not the least of which, it strikes me as implausible at least
18 for so-called "organized crime muscle" to have so skimpy a
19 track record.  But I don't want to dwell on that point, and
20 rather address the point that, back then, at that age, he was
21 released on bail and was out on bail for eighteen months, made
22 every appearance during that time, was sentenced to a short
23 term in New York City Jail; he did his term and has been out.
24      THE COURT:  Okay.  I've heard enough.  I am going to
25 fix conditions of bail, but they are going to be stringent

1  ones.

2       MR. SNYDER:  Your Honor, if I may.

3       THE COURT:  Hear me for a minute, Mr. Snyder --

4       MR. SNYDER:  Yes, Your Honor.

5       THE COURT:  -- and then I'll hear you.

6       What I plan to do is set a five-million-dollar bond to
7  be cosigned by four financially responsible persons and be
8  further secured by a million dollars cash or property, with the
9  defendant's travel restricted to the Southern and Eastern
10 Districts of New York.  He's to surrender all travel documents
11 and not seek new ones.  He would be subject to strict pretrial
12 services supervision and home incarceration, enforced through
13 electronic monitoring.  And all of the conditions would have to
14 be met for his release.

15      Mr. Snyder, I interrupted you.  You wanted to say
16 something.

17      MR. SNYDER:  I had just more in the way of argument,
18 but I can let it rest.

19      THE COURT:  I understand your concerns.  I also
20 understand the relative position of Mr. Tricario in the pecking
21 order, which is not to minimize his role.

22      Mr. Tricario, I have no idea whether you can meet
23 these conditions or not, but they are, as far as I'm concerned,
24 the minimum that would reasonably assure both your presence in
25 court and the safety of the community.  But if you violate any

1  of these conditions -- and I'm going to add another one, which
2  is that you are to have no contact, direct or indirect, with
3  the victim; which means, not only are you not to contact the
4  victim, you're not to send any emissaries to contact the
5  victim.
6           If you violate any of the conditions of this bond,
7  assuming that you're able to meet the financial and other
8  conditions, there is not a judge in this courthouse who
9  wouldn't delight in throwing you in jail until the trial of
10 this case.  And if there's any evidence that you've reached out
11 in any way to the victim, that would most certainly be the
12 result.  Do you understand that, sir?
13          THE DEFENDANT:  Yes.
14          THE COURT:  And do you understand that if you meet
15 these conditions and then fail to appear as required, you could
16 be charged with the crime of bail-jumping; so that, even if
17 this extortion case for some reason were to be dismissed, you
18 could be prosecuted on that charge?
19          THE DEFENDANT:  Yes.
20          THE COURT:  We need a date for a preliminary hearing,
21 Mr. Tween.  Will you waive to the thirtieth day or do you want
22 the tenth?
23      (Counsel and defendant confer.)
24          MR. TWEEN:  Your Honor, we'll waive out to thirty
25 days.

17

1  THE COURT: All right. Well, we'll set this down for
2 June 29th, on consent.
3  Anything further concerning Mr. Tricario this evening?
4  MR. SNYDER: No, Your Honor. Thank you.
5  MR. TWEEN: No, Your Honor.
6  THE COURT: Have a good evening.
7  MR. SNYDER: Thank you.
8  MR. TWEEN: Thank you.
9  (Proceedings concluded.)
10  *****
11  CERTIFICATION
12  I certify that the foregoing is a correct transcript
13 from the electronic sound recording of the proceedings in the
14 above-entitled matter to the best of my knowledge and ability.
15
16  [signature: Coleen Rand]
17
     _____          July 11, 2007
18  Coleen Rand, AAERT Cert. No. 341
    Certified Court Transcriptionist
19  Rand Transcript Service, Inc.
20
21
22
23
24
25