```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF NEW YORK
 2

 3   ------------------------------------X
                                         :
 4   UNITED STATES OF AMERICA            :  07-M-860
                                         :
 5             v.                        :  July 13, 2007
                                         :
 6   JOSEPH A. TRICARIO,                 :  500 Pearl Street
                                         :  New York, New York
 7             Defendant.                :
     ------------------------------------X
 8

 9        TRANSCRIPT OF CRIMINAL CAUSE FOR BAIL HEARING
             BEFORE THE HONORABLE THEODORE H. KATZ
10                UNITED STATES MAGISTRATE JUDGE

11
     APPEARANCES:
12

13   For the Government:       UNITED STATES ATTORNEYS OFFICE
                               BY: BENJAMIN GRUENSTEIN, ESQ.
14                                 ERIC JAMES SNYDER, ESQ.
                               Assistant United States Attorney
15                             One St. Andrew's Plaza
                               New York, New York  10007
16

17   For the Defendant:        DOUGLAS MICHAEL TWEEN, ESQ.
                               JOHN BASSINGER, ESQ.
18

19

20
     Court Transcriber:        SHARI RIEMER
21                             TypeWrite Word Processing Service
                               356 Eltingville Boulevard
22                             Staten Island, New York 10312

23

24

25


     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service
```

1     THE CLERK: <u>USA v. Tricario</u>.

2     Counsel, identify yourself for the record.

3     MR. GRUENSTEIN:  For the Government, Benjamin

4  Gruenstein.  Good morning, Your Honor.

5     MR. TWEEN: Good morning, Your Honor.  Douglas Tween,

6  Baker & McKenzie for defendant Tricario, and with me is my

7  colleague John Bassinger, and I'm going to orally move his

8  admission pro hoc vice for this case.

9     THE COURT: Where are you admitted, Mr. Bassinger?

10    MR. BASSINGER: I'm admitted in Texas, California and

11 Washington, D.C. and the Northern and Southern District of

12 Texas, Eastern and Central District of California.

13    THE COURT: You're in good standing in all those

14 courts?

15    MR. BASSINGER: Yes, I am, Your Honor.

16    THE COURT: I'll admit you pro hoc vice.

17    You're here on a bail application.

18    MR. BASSINGER:  Yes, Your Honor, that's correct.

19 We're moving to modify the conditions of Mr. Tricario's bail to

20 allow him to go from his home in East Meadow in Long Island

21 directly to and from work.  As set forth in our motion, the

22 conditions of bail that were set at Mr. Tricario's initial

23 hearing on May 30th were $5 million in a bond signed by four

24 financially responsible individuals including $1 million in

25 property.  He was -- he's monitored by an electronic ankle

bracelet and is reporting to Pretrial Services out in the Eastern District of New York and Long Island.

Under the conditions, he's allowed to drive from his home to Central Islip which is about twenty miles east to go visit with Pretrial Services when they ask him to come in. He's also allowed to travel on his own again into Manhattan which is about twenty miles west to come visit with his attorneys. He's been out on that basis now for nearly a month since the 19th of June. That's a significant event. We have now a track record with Mr. Tricario.

After he was arrested in a rather stringent, a very stringent bail package was sought, a package that with the modest means of his family members took several people to gather up enough property to meet the $1 million property requirement. His four brothers and a family friend signed onto these things, put up property where they had equity and houses and -- so the people who know Mr. Tricario best believed in him, know that he's not going to violate any condition of his bail. Again, he has been released now and has not been accused of violating any conditions of his bail in the nearly month he's been out.

Mr. Tricario well understands his responsibility to these people. He knows that if he were to mess up and violate the conditions of his bail his family and family friends would lose their homes and would lose a great deal more. The

4

1  Government would be able to follow them for quite some time.
2  His three brothers and cousin on the $5 million would be
3  obviously beholden to the Government really probably for
4  essentially the rest of their lives.  Mr. Tricario knows that.
5  He doesn't want to do anything to them and to their families.
6        What he would like to do is be able to go to work so
7  that his family does not end up without a home.  Mr. Tricario
8  and his wife own that home in East Meadow.  They have very
9  little equity in it.  They have a mortgage payment of
10 approximately $4,400.00 a month and they can't cover it on his
11 wife's earnings.  They have two children, ages 2 and 6.  Those
12 children obviously need a place to live and what we're asking
13 is that Mr. Tricario again be able to go directly to and from
14 work.  That's the only modification we're asking so that he can
15 support his family in the interim as we go through this.
16        THE COURT: Where does he work?
17        MR. BASSINGER: Prior to his arrest he was working for
18 Shaw Environmental on a construction site on Staten Island as I
19 understand it and we would be happy to verify location of
20 employment, hours, et cetera, with Pretrial Services.  There's
21 no problem with making sure all of that is verified through
22 Pretrial Services.
23        THE COURT: What does he actually do?
24        MR. BASSINGER: He --
25        [Pause in proceedings.]

5

1    MR. BASSINGER: Labor and construction. He works with
2 the union.
3    And we'd like to point out also as set forth in our
4 papers that in addition to the -- undercutting the idea of a
5 threat to the community, in addition to the past four weeks
6 where Mr. Tricario has been out there was a six-month period
7 between the time his alleged co-conspirator, Mr. Salzano, was
8 arrested before he was arrested when if he would have actually
9 had any thought of doing harm to the alleged victim there was
10 opportunity there if that would have been on the mind. Nothing
11 happened to the alleged victim.
12    So, Mr. Tricario, we submit, is not a threat to the
13 community. The modification of bail we're asking is simply to
14 allow him to go to work. We're happy to provide to Pretrial
15 Services whatever verification they need on these matters and
16 just want Mr. Tricario to be able to go and support his family.
17    So, again, we think that the significant change in
18 that his family was able to raise the bail, his family and
19 family friends were able to raise the bail, there is -- Mr.
20 Tricario well understands what it would mean to their families
21 as well as his own and we're asking for a modification to allow
22 a chance for all those families to stay in their homes by Mr.
23 Tricario continuing to abide by the terms of his bail and be
24 allowed to work. Thank you, Your Honor.
25    THE COURT: Mr. Gruenstein or Mr. Snyder, who's

talking?

MR. GRUENSTEIN: Your Honor, Mr. Snyder is going to handle it. He handled it before Judge Maas. Now that he's arrived he'll handle it.

THE COURT: Okay. Fine.

MR. SNYDER: Your Honor, yesterday I dropped off the transcript of the argument so I don't -- so unless Your Honor would like to hear the full argument, you have it.

THE COURT: No, I've read it. I've read it.

MR. SNYDER: But just to add some of the highlights. This is the muscle for the mob. This is the guy that's brought by the soldier, Charlie Salzano, for intimidation purposes. This is the guy that worked for the soldier who works for the boss of the Genovese Crime Family, the largest most powerful crime family. This is a threatening violent interaction with the victim, a victim who's out there, a victim who's easily intimidated under these circumstances. If Your Honor needs additional sort of proof of the violent threatening nature, go right to the recordings. On these recordings when this man is standing there the words are to the effect, and this is Charlie Salzano speaking saying they're not going to make me, Charlie Salzano, made man soldier come and hurt you, take you in a wheelchair, do this violence to you. They're going to send somebody else to do it and that's precisely how the mob works, Your Honor.

1    I submit that it's not the made guys and it's not the
2 bosses that go and do the violence.  It's the muscle, the guys
3 who aren't yet made and who are making their bones in the
4 family, Your Honor.
5    We were disappointed quite frankly with the bail
6 package as it was set.  The Government was seeking detention
7 just as Charlie Salzano was detained, just as Danny Leo was
8 detained.  We were seeking detention on this man, the man who
9 was there in these threatening encounters, but Judge Maas
10 sought fit to put very, very strict restrictions on this person
11 so he's not able to go out, talk to other people, mix it up and
12 intimidate the victim or anybody else.
13    There are no changed circumstances.  We're living
14 under that ruling by Judge Maas now and to change it now when
15 there's no changed circumstances whatsoever.  The Government
16 did not go forward to the grand jury at the request of defense
17 counsel to try to work out a disposition and we held off on
18 that.  We're holding off until the end of this month.  But all
19 the evidence is before the grand jury and they've already
20 indicated Charlie Salzano on this very charge as well as Danny
21 Leo.
22    So there seems to be no reason right now to upset the
23 sort of balance that as struck by Judge Maas that day and I'd
24 ask Your Honor to keep the same bail conditions in place.
25    THE COURT: What kind of sentence is this defendant

1  facing?
2         MR. SNYDER: He does have -- I don't have his record
3  in front -- his rap sheet in front of me, Your Honor, but it is
4  a substantial sentence of at -- it's probably somewhere between
5  the 40 to 60 months just on this one act. If he were to plead
6  and get acceptance points and if he doesn't have a criminal
7  history, although I think he does have a criminal history and
8  if it were to go to trial, the acceptance points it would be
9  much, much higher.
10        MR. BASSINGER: Your Honor, if I may address just a
11 couple of things. I'll start with the criminal history. As we
12 discussed at the last hearing, the loan conviction, and Mr.
13 Salzano was I believe seventeen years ago when he was around
14 20, 22 years old, something like that, he's been absolutely
15 clean since then.
16        We'd also like to comment that the prison sentence
17 actually given to Mr. Salzano who the Government alleges to be
18 a soldier, much higher up than they allege Mr. Tricario is,
19 was 39 months. So this is not a five years, ten years.
20        THE COURT: Has he been sentenced already?
21        MR. SNYDER: No, he hasn't yet. I think 39 is
22 probably the bottom of the range and that was after a Plea
23 Agreement and he has absolutely no prior history but that was
24 the bottom of the range and he hasn't been sentenced yet.
25        MR. BASSINGER: I'm sorry, Your Honor. I had

1  understood previously it was 39 months.
2         But I think it's also important to comment that one,
3  by the Government's admission Mr. Tricario doesn't -- they
4  don't have Mr. Tricario saying much on these recordings they
5  allege to have.  The statements, the big threatening statements
6  are by Mr. Salzano.  Two, there is -- at this point there isn't
7  any allegation that Mr. Tricario raised a fist to anyone or
8  anything like that.  That's not there.  Three, we would submit
9  that the allegations about connections to an acting mob boss,
10 Danny Leo, are just smear at this point.  There's nothing that
11 we've been told that would suggest that there's ever been
12 contact between Mr. Tricario and Danny Leo.  So those are three
13 issues.
14        And, again, we do have significant changed
15 circumstances in that Mr. Tricario has been able to travel on
16 his own for limited circumstances.  He's shown for a month now
17 that he can tow the line, he can do the things he's required to
18 do.  He knows what it would do to multiple members of his
19 family and family friends if he were to screw up and he just
20 needs the opportunity to let his wife and kids stay in the
21 house.
22        MR. SNYDER:  Quick response, Your Honor.  There was
23 actually a threat on the tape by Mr. Tricario.  The initial --
24 in the beginning of each of these encounters, Charlie Salzano
25 waits in the car.  Salzano dispatches Tricario to go into this

1  victim's business and bring him out so that he's not
2  susceptible to any surveillance I suspect inside the business.
3  When Tricario goes in and gets the victim, he asks him because
4  they're expecting $50,000.00 from the victim, how much you got
5  and when the victim on each of these occasions explains he only
6  has $1,000.00, this victim says "Charlie is going to fucking
7  snap," and then he brings him to Charlie.
8       As to the Danny Leo and no connection, on one
9  occasion when this man is standing next to Salzano as Salzano's
10 threatening the victim with terms like I'm not going to be the
11 one to do harm to you, I'm not going to be the one to hurt you,
12 they're going to send somebody else to do it and if I have to
13 take you in a wheelchair I'll take you in a wheelchair.  One
14 other threat was Salzano says in his presence "If you lie to
15 me, if you fucking lie to me I'm going to shoot you to Danny,"
16 Danny Leo, the boss of the family as the ultimate threat, like
17 as if it's not threatening enough to have a large soldier and
18 his muscle in your face telling you to pay.  Now they're saying
19 we're going to shoot you to the boss of the family and then
20 you're going to have to deal with him.
21      So there is more to it than what you've heard.
22      MR. BASSINGER: Just the last comment.  The comments
23 that we just heard attributed I understand he said the
24 statements were made by Mr. Salzano, not by Mr. Tricario.
25      MR. SNYDER: Not the fucking snap one.  That was

1  Tricario.
2           MR. BASSINGER: No, that --
3           THE COURT: So, Mr. Snyder, why do you think if he was
4  allowed to go to work that would present a substantial danger?
5           MR. SNYDER: Well, I think if we had him in the jail
6  here he wouldn't be able to go out and do anything.  Instead,
7  Judge Maas said no, no, no, we're going to lock him in his
8  house, we're going to have electronic monitoring.  He's not
9  allowed to go out and do anything that would allow him to slide
10 by the victim's place of business or encounter him in some
11 other way and with very few words I suspect be successful in
12 intimidating the victim given his connections to the Genovese
13 Crime Family.
14          When you put him out on the street and allow him to
15 drive to his place of business, and I'm not even so sure it's
16 one location. I think he would be working wherever -- I don't
17 know his specifics are -- I don't know where he would be
18 driving to but if you're allowed to be outside the house
19 driving somewhere for twelve hours a day it does open up
20 opportunity to perhaps either visit the victim himself or
21 arrange in a way that's not clear for the Government to detect
22 through investigation to meet with other people and have those
23 other people provide that intimidation.
24          Your Honor, not to stress the point, but the real
25 point is here nothing has changed.  This has been reviewed --

1    THE COURT: Well, I would have -- to me that is the
2  real point.  I mean I don't think there's really been any
3  substantial change in the three or four weeks since Judge Maas
4  imposed the conditions of release.  It sounds like you're
5  really just trying to do a do over here because -- I'm not
6  going to change what another judge did unless there was a
7  substantial change that merits it.
8    In reading the transcript, Judge Maas was very clear
9  that the conditions he set were the minimum that would be
10 necessary to assure the safety of the community.  Despite the
11 Government's request for detention, he said this is the minimum
12 necessary.  You're now saying no, there's less than necessary.
13 Not much has happened that's different.
14    MR. BASSINGER: Your Honor, just briefly. I won't
15 belabor it but I think it is a significant difference when we
16 have a sort of theoretical chance that the family may be able
17 to raise some money and then again with a family of -- none of
18 these family members have so much money that they could take
19 this kind of hit and for Mr. Tricario to be there knowing
20 that's on the line well understanding and, again, a month of
21 showing he can abide by these conditions in addition to the six
22 months before I think is significant.
23    THE COURT: I guess at the hearing itself had you ever
24 gotten to the point of proposing a bail package?
25    MR. BASSINGER: No, not really, Your Honor.  We had

1  just gotten into the matter and so really hadn't had an
2  opportunity to talk about a package and ask for some ability to
3  have a package.
4              [Pause in proceedings.]
5              MR. SNYDER: Your Honor, a big change that could have
6  in fact taken place in this case would be the Government's
7  voting on an indictment and we didn't do that because of these
8  plea discussions at the request of counsel. Had we done that
9  we would then have, in fact, changed circumstances that would
10 cause very much the other way and we'd be obviously arguing
11 this again. Perhaps they would have their other crack at it
12 before the District Judge, Judge Kaplan.
13             Quite frankly, Your Honor, that might be the time to
14 deal with this. The Government is going to do that in the next
15 week and a half because that's when -- the adjournment was for
16 thirty days and then they will have a new bite at it with Judge
17 Kaplan and perhaps that's their new circumstance.
18             THE COURT: Look, I was willing to hear the argument
19 but I cannot -- I am not prepared to alter the bail conditions
20 set by another judge three weeks ago based upon the defendant
21 simply satisfying the conditions that that judge set. Judge
22 Maas said it was the minimum that he thought was necessary and
23 I'm not going to undercut that. So I'm not going to modify the
24 bail at this point.
25             As Mr. Snyder said, the indictment may change things

14

1 and maybe Judge Kaplan will have another view of it.
2          Anything further?
3          MR. SNYDER: Nothing from the Government, Your Honor.
4          MR. BASSINGER: Nothing from defense.
5                              * * * * *

```
                                                              15
 1       I certify that the foregoing is a court transcript from an
 2   electronic sound recording of the proceedings in the above-
 3   entitled matter.
 4
 5                              _____
 6                                       Shari Riemer
 7   Dated:  August 15, 2007
```