Approved:  _____
           ERIC SNYDER
           Assistant United States Attorney

**07 MAG**

**860**

Before:    HONORABLE ANDREW J. PECK
           United States Magistrate Judge
           Southern District of New York

- - - - - - - - - - - - - - - x

                                    SEALED
UNITED STATES OF AMERICA      :     COMPLAINT

          -v-                 :     Violation of
                                    18 U.S.C. § 894
JOSEPH A. TRICARIO,           :
     a/k/a "Joey"                   COUNTY OF OFFENSE:
     a/k/a "Anthony Tricario,":     NEW YORK

          Defendant.          :
- - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

          MICHAEL CASTNER, being duly sworn, deposes and says
that he is a Special Agent with the Federal Bureau of
Investigation ("FBI"), and charges as follows:

          From in or about 2002 up to and including on or about
October 28, 2006, in the Southern District of New York and
elsewhere, JOSEPH A. TRICARIO, the defendant, and others known
and unknown, unlawfully, willfully and knowingly did combine,
conspire, confederate and agree together and with each other to
use extortionate means to collect and attempt to collect
extensions of credit as that term is defined in Title 18, United
States Code, Section 891, and to punish a person for the
nonrepayment of such extensions of credit, to wit, TRICARIO and
others threatened the Victim with physical violence and other
harm if he did not make prompt repayment of various loans and
other debts, in violation of Title 18, United States Code,
Section 894.

          (Title 18, United States Code, Section 894.)

          The bases for my knowledge and the foregoing charge
are, in part, as follows:

          1.   I am a Special Agent with the FBI, and I have been
personally involved in the investigation of this matter.  I have
been a Special Agent for approximately 3 years and am presently
assigned to an FBI squad that investigates organized crime in New

York City, specifically the Genovese LCN Organized Crime Family. I have conducted several investigations including ones involving loansharking and extortion offenses. This affidavit is based upon my conversations with other law-enforcement agents and with loansharking victim, as well as my examination of reports, records, and audio taped conversations. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, audiotaped conversations, and unrecorded conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

2. I have spoken with an individual (the "Victim") who informed me that on several occasions in approximately 2002, 2003 and 2004, he borrowed a total of approximately $150,000 from an individual that he knew only as "Charlie Brown."

3. Charlie Brown has been identified as Charles Salzano a/k/a "Fat Charlie," (hereinafter "Salzano,"). On April 19, 2007, Salzano pled guilty to loansharking involving the same victim, in violation Title 18, United States Code, Section 894 and a separate extortion in violation of Title 18, United States Code, Section 1951. The agreement between the Victim and Salzano was that the Victim would pay three "points," or three percent of the amount borrowed per week, as interest on these loans. The Victim indicated that he made payments to Salzano on a regular basis for several years before falling behind in or about July 2006. The Victim has informed me that beginning in approximately July 2006, when the Victim began to fall behind on his interest payments, Salzano and his associate, "Joey" began to first pressure then make threats that the Victim would suffer physical injury if he did not pay the money he owed on his debt. The Victim described Joey as a "heavy hand" or muscle for Salzano. During the time that the Victim was able to make payments to Salzano, he paid in excess of $200,000 on the original loan principal of $150,000.

4. During the course of this investigation, I took steps to learn the true name of the individual identified by the Victim as "Joey." I have conducted surveillance in which I observed Joey driving a car that was registered to an individual named "Donna Tricario" at same address that is listed as the residence of JOSEPH A. TRICARIO, the defendant, on numerous public records that I have reviewed.

5.    On Saturday, October 7, 2006, at approximately
8:30 a.m., the Victim met with Salzano and JOSEPH A. TRICARIO,
the defendant, in a meeting that was ordered by Salzano to
discuss this debt[1].  During this meeting I was able to positively
identify TRICARIO from earlier surveillance activity that I
conducted and subsequent checks of records that I received from
the New York State Department of Motor Vehicles, as well as other
records that I reviewed.  After the meeting, I then recovered the
recording device from the Victim and reviewed the recorded
conversation[2].  I was able to hear TRICARIO ask the Victim, as he
walked to where Salzano was waiting, "Do you have anything?"
When the Victim explained that he only had $1,000 for Salzano,
TRICARIO responded, "I'll tell you right now, he (Salzano) is
gonna fucking snap."  After Salzano was informed that the Victim
only had $1,000 to pay toward this loansharking debt, Salzano
stated, "Now this is a fucking insult.  I thought at least 50
($50,000, a portion of the debt that is still owed by the
Victim)."  Later in the meeting, Salzano asked the Victim, "When
you gonna pay me, next month?  Next week?  I'll stop everything
you are doing with J.P., (a business associate of the Victim).
I'll stop it today.  You understand?  I'll stop every fucking
thing and I'll make it that any day I reach you, and, I gotta
turn you out.  Is that what you want?"  Later in that same
conversation, Salzano stated to the Victim, "You're with me.  I
don't give a fuck who you talk to, you belong to me until you pay
it.  Then once you pay me, it's up to me to release you.  Don't
think you are talking to other people and say, 'don't worry about
nothing,' because I'll show you the fucking day."  Still later in
that same conversation, TRICARIO stated to the Victim, "I asked
you the other day on the phone, 'What are you gonna have?'"  The
Victim responded to TRICARIO explaining that he didn't know how
much money he was going to be able to pay, further explaining to
TRICARIO that he, the Victim, was going to sell his building and
his business.

---

[1] Prior to this meeting and the one that is described in
paragraph 6 below, I provided a small recording device to the
Victim so that his meeting with TRICARIO and Salzano could be
recorded.  On each of these occasions, I was present in the
vicinity of this meeting and was able to observe as the Victim met
with Salzano and TRICARIO.  Additionally, another law enforcement
officer with whom I work was able to videotape the meetings between
the Victim, TRICARIO and Salzano.

[2] The quoted portions of conversations in this complaint are
based upon my initial review of the recordings and are preliminary
in nature.

6.    On Saturday, October 28, 2006, at approximately 8:30 a.m., the Victim again met with Salzano and JOSEPH A. TRICARIO, the defendant, in a meeting that was ordered by Salzano to further discuss this debt.  I was present in the vicinity of this meeting and was able to observe the Victim meet with Salzano and TRICARIO.  From my observations I was again able to positively identify TRICARIO.  During the October 28, 2006 meeting, Salzano and TRICARIO continued to pressure the Victim to pay his loansharking debt, and Salzano, while TRICARIO was present, threatened the Victim stating, "They don't want me to get violent with you, but they'll send someone to get violent with you."  At the conclusion of this meeting, TRICARIO confirms the date of the next meeting between the Victim, Salzano and himself to further discuss payment of the debt.

7.    I have reviewed telephone records for Salzano's cellphone and determined that on May 2, 2006, Salzano, while in the Southern District of New York, placed a telephone call to both TRICARIO and the Victim.  Additionally, during his guilty plea allocution on April 19, 2007, Salzano admitted that he had placed a phone call from the Southern District of New York in furtherance of the conspiracy to extort money from the Victim.

8.    I know from information that I received from other confidential sources that Salzano is a member of the Genovese LCN Crime Family who reports to the leadership of that Crime Family in the Southern District of New York.

WHEREFORE, deponent prays that a warrant be issued for the arrest of JOSEPH A. TRICARIO, the defendant, and that he be imprisoned, or bailed, as the case may be.

MICHAEL CASTNER
Special Agent
Federal Bureau of Investigation

Sworn to before me this
____ day of May, 2007          MAY 2 9 2007

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

ANDREW J. PECK
UNITED STATES ⊙ ... · MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

4